# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FORGE INDUSTRIAL STAFFING, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  06 C 3848 |
| | ) | Judge Blanche M. Manning |
| GEORGE DE LA FUENTE, and IMPAQ SOLUTIONS, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Forge Industrial Staffing, Inc. has brought suit against George De La Fuente and Impaq Solutions, Inc. alleging breach of fiduciary duty (Count I), breach of duty of loyalty (Count II), violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count III), breach of contract (Count IV), and tortious interference against Impaq (Count V).  De La Fuente and Impaq move to dismiss all counts under Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, the motion is denied.

**I.     Facts**

For the purposes of this motion to dismiss, the court accepts all well-pleaded allegations as true.

*Forge's business*

Forge specializes in providing highly skilled, full-time, temporary industrial workers to its clients in the Midwest.  Forge operates in Illinois, Indiana, Kentucky, Michigan, and Ohio with 150 employees and places thousands of temporary workers.  According to Forge, the

industry is highly competitive and Forge's profitability depends on numerous factors including its ability to provide customer service, identify and attract reliable and skilled industrial workers, provide creative pricing and benefit strategies, minimize injury and benefit costs, and obtain and maintain its customer relationships.

*De La Fuente's employment at Forge*

De La Fuente was hired by Forge in February 1998 as manager of support services and in early 2000 was promoted to director of operations. Forge alleges that this position was akin to an executive vice-president position at other companies. De La Fuente was one of five directors at the company. He reported directly to the president and had access to all aspects of Forge's business, including proprietary information, customer information, proposals, cost structures, and reports, among other things. Forge alleges that its proprietary and confidential information is valuable and takes reasonable steps to protect it, including, among other things, having employees (De La Fuente included) execute a Proprietary Interest Protection Agreement.

In early 2005, De La Fuente was moved to the director of risk management position "due to certain performance issues." In this role, De La Fuente still participated in directors' meetings, contributed to high level business initiatives, and continued to have access to information regarding all aspects of Forge's business.

Forge alleges that De Le Fuente's performance continued to suffer after he became the director of risk management and that when he was spoken to about his job functions, he indicated that he was going "to bring Forge down."

*De La Fuente's use of computers*

In all of his roles at Forge, De La Fuente used Forge's computer systems, which were

linked across state lines and were used to make proposals to customers, monitor assignments at client sites, communicate with customers, and manage payment issues. Forge has a number of policies, procedures, and agreements that it uses to protect its confidential information and safeguard its customer relationships, among other things. De La Fuente was involved in the development of many of these policies and procedures.

*Forge's investigation of De La Fuente*

Forge alleges that when De La Fuente threatened to "bring Forge down," it began to investigate his conduct at the company. On May 24, 2006, Forge asked De La Fuente to submit his laptop computer to the Forge information technology ("IT") department. He initially refused and did not turn it in until the next day, a delay which "raised a few eyebrows." On May 25, 2006, the day that De La Fuente turned in his computer, Forge gave it to a third-party computer forensic examiner for inspection. Forge spent over $5,000 for this inspection as well as for the examiner's attempt to recover destroyed data.

Upon examination, the examiner discovered various improper activities and measures that De La Fuente used to hide his actions. Many aspects of De La Fuente's hard drive were impaired, altered, or destroyed, thus limiting the recovery of data.

Through its investigation, Forge uncovered an alleged scheme by which De La Fuente was setting up a competing business and in the process was taking Forge's customers and revenue. Forge alleges that it learned that as far back as 2001, De La Fuente incorporated and served as president of Impaq, a competing industrial staffing company. These findings were made from the website addresses and web pages found on De La Fuente's computer. Forge further learned that the domain name impaqinc.com was registered to De La Fuente at his home

address and that Impaq's address was also De Le Fuente's home address.

Forge's examination showed that software designed to destroy files and the hard drive itself has been run on the computer on or about May 24 and 25, 2006. Forge also became aware that files and documents, such as reports, charts, and communications, had been deleted from the computer and that the destruction software was used to hide internet activity and destroy evidence of Impaq.

In addition to the above, Forge's investigation revealed that the computer had been used to visit websites containing explicit images of the male anatomy and then download these images in violation of Forge's express policies.

## II. Motion to Dismiss Standard

In ruling pursuant to Fed. R. Civ. P. 12(b)(6), the court assumes the truth of all well-pled factual allegations in the complaint, construing allegations liberally and viewing them in the light most favorable to the non-moving party. *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Craigs, Inc. v. General Electric Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). Dismissal is properly granted if it is clear that no set of facts which plaintiff could prove consistent with the pleadings would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1579 (7th Cir. 1991). The court will not dismiss a complaint unless it is clear that there is no set of facts on which a plaintiff could recover on a claim. *Freiburger v. Emery Air Charter*, 795 F. Supp. 253, 259 (N.D. Ill. 1992).

## III. Analysis

### A. Breach of Fiduciary Duty and Breach of Loyalty (Counts I and II)

1. *Duplicative*

De La Fuente first argues that one of these counts (breach of fiduciary duty or breach of loyalty) must be dismissed because it is duplicative of the other. Specifically, De La Fuente contends that the duty of loyalty is, by definition, a fiduciary duty that arises from the principal-agent relationship between the employer and employee, and therefore, because a breach of loyalty is a breach of fiduciary duty, one of the counts must be dismissed as duplicative.

Forge asserts that alternative pleading is appropriate under Fed. R. Civ. P. 8(e)(2) and notes that the duties of loyalty as owed both by employees and officers are different. *See, e.g., Veco Corp. v. Babcock*, 243 Ill.App.3d 153, 160-61 (1993) ("In general, employees may plan, form, and outfit a competing corporation while still working for the employer, but may not commence competition. Corporate officers, however, stand on a different footing; they owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed.")(internal citation omitted). According to Forge, because De La Fuente may be deemed to be either an employee or officer (or both), and the duties owed by each are different, Forge should be allowed to pursue both claims.[1]

The court agrees that these counts are not duplicative in that they have different elements that must be proved. However, the court notes that the misconduct pled in support of each claim is exactly the same, as are the claimed injuries, and whether De La Fuente is ultimately deemed to be an employee or an officer or both, Forge will not be able to recover twice for the same

---

[1] Indeed, the breach of fiduciary duty claim uses the "officer" language (i.e., cannot actively exploit their positions for their own personal benefit and cannot hinder the corporations's ability to continue the business for which it was developed) while the breach of loyalty count refers only to "employees" and their duty of loyalty to the company.

injury.  Accordingly, the court will allow both claims to stand pending proof later in the litigation.  *Thomas v. Burlington Northern R. Co.*, 1991 WL 249720, at *1 (N.D. Ill. Nov. 15, 1991)("Because Thomas will not be able to recover twice for the same offense, we shall let the count stand; Thomas may attempt to prove that he is entitled to damages for the emotional distress occasioned by the kicking in addition to damages for the alleged battery itself.").

De La Fuente's motion to dismiss either Count I or II as duplicative is denied.

    2.    *Do exhibits defeat claim for disloyalty?*

De La Fuente also asserts that the Impaq website pages attached as exhibits to the complaint defeat Forge's claim for disloyalty because they show that Impaq was not in competition with Forge.  De La Fuente asserts that the website pages describe Impaq as providing "career" clerical and industrial employees while Forge allegedly places only temporary industrial workers.  De La Fuente also attaches additional pages from Impaq's website which he asserts show that the website was not in active use and therefore, apparently, Impaq could not be a competitor of Forge.[2]  Moreover, De La Fuente points to Forge's policies, also attached as an exhibit to the complaint, which allows its employees to engage in outside work.  Finally, De La Fuente also claims that the complaint is "entirely devoid of any specific allegations of

---

[2]De La Fuente seeks to have this court consider what it calls Exhibits C-1 (additional pages from the Impaq website) and E-1 (additional pages from the Forge Employee Handbook), which it has attached to its motion to dismiss.  The court may, without converting the motion to one for summary judgment, consider documents attached to De La Fuente's motion to dismiss if they are referred to in the complaint and are central to the claim.  *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429 (7th Cir. 1993)("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").  Selected pages from the website and the handbook were already attached by Forge to its complaint.  Because De La Fuente is merely adding pages to documents that were attached to the complaint, the court will consider these on the motion to dismiss.

competitive activity."

De La Fuente invites the court to find that based on Impaq's website, it was not a competitor of Forge. However, the court is not willing to make this crucial factual determination at the motion to dismiss stage when it must accept as true all well-pled allegations. While it is true that exhibits to a complaint control over inconsistent allegations, whether one company is a competitor of another is a detailed factual determination that is not amenable to decision without additional evidence. Further, whether the website was active on the date that the website pages were printed may or may not be significant. Again, this one piece of evidence is simply not determinative. Thus, De La Fuente's argument that the exhibits attached to the complaint (as well as De La Fuente's motion to dismiss) negate the claims of breach of fiduciary duty and breach of loyalty is denied.

Further, to the extent that De La Fuente argues that Counts I and II should be dismissed because they fail to specifically allege competitive activity, it is denied. As recently noted by the Seventh Circuit, a full recitation of facts is unnecessary in federal court. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary."). Indeed, as noted by the *Kolupa* court, "'[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain…' should stop and think: What rule of law *requires* a complaint to contain that allegation?'" *Kolupa*, 438 F.3d at 714 (*quoting Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). "Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P.

9(b)." *Id*. at 715. The complaint in the instant case provides more than sufficient facts to apprise De La Fuente of the claims against him. This is all that is needed at this stage of the game.

Finally, De La Fuente also asserts at length that Forge has not specifically alleged that De La Fuente was an "officer," and that, as a matter of law, De La Fuente could not have been an officer and therefore, could not have breached any fiduciary duties owed by officers.[3] According to De La Fuente, Forge is merely attempting to restrict the rights of an employee (i.e., De La Fuente) to prepare to compete by vaguely alleging that De La Fuente is an officer, and thus subject to more restrictive rights and obligations with respect to Forge. This argument is simply misplaced at the motion to dismiss stage where resolution of factual matters is inappropriate.

At this point, Forge alleges that De La Fuente was "one of the highest level employees at Forge," had "various senior executive positions at Forge," "was one of only five directors at Forge," and was "akin to an Executive Vice President in that no such positions existed at Forge." These allegations are sufficient upon which to base a breach of fiduciary duty claim. De La Fuente will have ample opportunity later in the case to attempt to prove that he was not an officer, and therefore was not subject to the higher duties owed by officers under Illinois law.

De La Fuente's motion to dismiss Counts I and II for failure to allege "competitive activity" or that De La Fuente was an "officer" is denied.

   3.  *Failure to allege other disloyalty or "proximately-caused damages"*

For the reasons just discussed, De La Fuente's assertion that Forge has not alleged any

---

[3]De La Fuente alludes to this argument in the introductory section of his opening motion but does not discuss it in depth until his reply brief. While the court will generally not address new arguments raised in a reply brief, because De La Fuente briefly mentioned this argument in his opening brief, the court will consider it in the interest of completeness.

other disloyalty and has failed to adequately allege damages is unpersuasive. As to allegations of "other disloyalty," no such allegations are necessary for the reasons already described. Further, Forge's allegation that it "has been injured and will continue to be damaged by De La Fuente by the loss of customers, revenues and/or goodwill, the decrease in the value of its property and the payment of monies to De La Fuente while he was employed by Forge" sufficiently alleges damages in federal court.

For all of the reasons discussed above, the motion to dismiss Counts I and II is denied.

B. <u>Computer Fraud and Abuse Act</u> ("CFAA") (Count III)

De La Fuente next argues that Count III should be dismissed for failure to state a claim because it fails to establish a lack of authority to erase data (i.e., "unauthorized access"), it does not properly specify what specific information of value or use to Forge was lost, and it does not allege that Forge's expenditures for the forensic computer examiner represented the "reasonable" cost of restoring data.

1. *Unauthorized access*

According to Forge, De La Fuente violated the CFAA, 18 U.S.C. § 1030 *et seq*., by altering or destroying data on his computer to hide his actions and/or the existence of Impaq, altering or destroying explicit images which violated Forge's policies, running software that destroyed information on the hard drive or destroyed Forge's customer and business information.[4]

---

[4]Forge alleges that De La Fuente violated the following provisions of the CFAA:

1. Knowingly caused the transmission of a program, information, code or command and as a result of such conduct, intentionally caused damage without authorization, to a protected computer in excess of $5,000

De La Fuente first argues that the CFAA claim must be dismissed because each of the CFAA sections he is alleged to have violated all require "unauthorized access" of a computer. 18 U.S.C. §§ 1030(a)(5)(A)(i), (a)(5)(A)(2), (a)(5)(A)(iii), and (a)(4).[5] According to De La Fuente, the exhibits that Forge attached to its complaint (i.e., company policies and procedures) affirmatively demonstrate that nothing in Forge's policies limited De La Fuente's authority to delete or erase data. Thus, De La Fuente contends that the exhibits refute the assertion that the data elimination was unauthorized.

This argument is rejected in light of *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006). The facts in IAC are quite similar to the ones at issue here. Specifically, the defendant, employed by IAC, decided to quit his job there and go into business for himself. However, prior to doing so, he deleted all the information on the laptop computer that IAC had provided to him – "not only the data that he had collected but also data that would

---

        violation of 18 U.S.C. §§ 1030(a)(5)(A)(i);

2. Intentionally accessed a protected computer without authorization or exceeded his authority to obtain information thereby recklessly causing damage in excess of $5,000.00 in violation of 18 U.S.C. § 1030(a)(5)(A)(ii);
3. Intentionally accessed a protected computer without authorization or exceeded his authority to obtain information thereby causing damage in excess of $5,000.00 in violation of 18 U.S.C. § 1030(a)(5)(A)(iii)
4. Knowingly and with intent to defraud, intentionally accessed a protected computer without authorization or exceeded his authority, and by means of such conduct furthered the intended fraud and obtained valuable information resulting in damages exceeding $5,000.00 in violation of 18 U.S.C. § 1030(a)(4).

[5]De La Fuente is also liable if he "by the conduct described in clause [§1030(a)(5)(A)] (i), (ii), (iii) of subparagraph (A), caused (or in the case of an interrupted offense, would, if completed, have caused) – (i) loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(a)(5)(B)(i).

have revealed to IAC improper conduct in which he had engaged before he decided to quit." *Id*. at 419. The plaintiff sued under the CFAA and the district court granted the defendant's motion to dismiss.

The Seventh Circuit, however, reversed. It found that the defendant, assuming the well-pleaded facts to be true as the plaintiff appealed from a motion to dismiss, violated 18 U.S.C. § 1030(a)(5)(A)(ii), which imposes liability on anyone who "*intentionally accesses* a protected computer *without authorization*, and as a result of such conduct, recklessly causes damage." *Id.* at 420 (first emphasis in original; second emphasis added). The court found that the defendant's "authorization to access the laptop terminated when, having already engaged in misconduct and decided to quit IAC in violation of his employment contract, he resolved to destroy files that incriminated himself and other files that were also the property of his employer, in violation of the duty of loyalty that agency law imposes on an employee." *Id*. (citations omitted).

According to Forge's allegations, similar circumstances existed here. De La Fuente, who was a director of the company and who allegedly had started a competing business in 2001, accessed prohibited sexually explicit websites, downloaded software destruction programs onto Forge's computer, and intentionally destroyed files, records, and other information and data kept on his computer when Forge asked De La Fuente to turn the computer over to the company. As in *IAC*, and assuming the truth of the complaint's allegations, any authorization De La Fuente had to delete or erase information from the computer ended when he engaged in misconduct in violation of his duty of loyalty to the company. *Beltran v. Brentwood North Healthcare Center*, LLC, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006)(citations omitted) ("Courts applying Illinois law have construed the duty of loyalty to prohibit officers or employees from improperly competing

with their employer, soliciting the employer's customers, enticing co-workers away from the employer, diverting business opportunities, engaging in self-dealing and/or otherwise misappropriating the employer's property or funds.").

The court acknowledges that De La Fuente has pointed to a recent district court case in Florida that disagrees with the Seventh Circuit's approach in ascertaining whether access was "without authorization." *See Lockheed Martin Corp. v. Speed*, No. 6:05-CV-1580-ORL-31, 2006 WL 2683058, at *5-6 (M.D. Fla. Aug.1, 2006). As De La Fuente is well aware, however, this court is bound by the decisions of the Seventh Circuit Court of Appeals, not the District Court of the Middle District of Florida. Accordingly, De La Fuente's motion to dismiss the CFAA count on the ground that his access was authorized is denied.

2.     *Allegations regarding reasonable restoration costs*

De La Fuente asserts that the CFAA count should be dismissed because Forge has not properly alleged "loss" as required under the relevant sections of the CFAA (noted above). De La Fuente argues that: (a) Forge does not allege that its payment was limited to the cost of damage assessment and data restoration; and (b) Forge "cannot achieve the [$5,000] statutory minimum by hiring high-priced expert witness talent."

Under the CFAA, loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

As to De La Fuente's first ground for dismissal, Forge's allegation that it "expended

sums in excess of $5,000.00 for the computer examiner *to investigate, analyze and attempt to recover destroyed data* from the De La Fuente computer," Complaint at ¶ 44 (emphasis added), sufficiently alleges loss under the definition in the statute. As to the second ground, that expert witness fees, as De La Fuente terms them, are not "reasonable" is wholly unsupported by any citations to authority or even supportable argument. Thus, the argument is rejected.

    C.    <u>Breach of Contract</u> (Count IV)

        *1.    Does the employee handbook create a contract?*

De La Fuente next argues that the breach of contract count must be dismissed because the employee handbook, upon which the breach of contract count is purportedly based, expressly disclaims the creation of any contractual relationship. Specifically, De La Fuente points to the following language from the handbook:

> This handbook is not a contract guaranteeing employment for any specific duration . . . No supervisor, manager, or representative of the Company, other than a President or Vice-President, has the authority to enter into any agreement for employment for any specified period or to make any promises or commitments contrary to the foregoing. Any employment agreement entered into by the President or Vice-President shall not be enforceable unless it is in writing and signed by both parties.

The handbook also states that "[t]he policies in this handbook are subject to change at the sole discretion of the Company." De La Fuente argues that these provisions preclude treating the handbook as a legally binding document.

"Under Illinois law, . . . an employee handbook or other statement of employment policy . . . can give rise to an enforceable contract provided three conditions are met: (1) the language of the statement sets forth a promise in terms clear enough to cause a reasonable employee to believe that an offer has been made; (2) the statement is distributed to the employee, so that the

employee is aware of its contents and reasonably construes it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after reading the statement." *Tatom v. Ameritech Corp.*, 305 F.3d 737, 742-43 (7th Cir. 2002)(citation omitted). However, an express disclaimer can foreclose any reliance on purported promises made in a handbook or other employment documents. In *Tatom*, the Seventh Circuit stated that the following disclaimer in compensation program documents precluded finding that any contract had been formed:

> The CBS Compensation Program is a statement of CBS' intentions and does not constitute a guarantee that any particular amount of compensation will be paid. It does not create a contractual relationship or any contractually enforceable rights between CBS and the employee.

*Id.* at 743.

Here, however, the disclaimer in Forge's handbook does not disavow that it forms any contract whatsoever, only employment for a certain period of time. The disclaimer in Forge's handbook is not as broad as that in the *Tatom* case. Thus, the court cannot state at this juncture that, as a matter of law, the employee handbook did not create a contract.

Moreover, the breach of contract count is not based solely on the employee handbook. Forge attaches to its complaint a Proprietary Interest Protection Agreement ("Agreement") that De La Fuente executed upon commencing employment at Forge. *See* Complaint, Exh. D. Pursuant to the Agreement, the signatory agrees not to solicit, participate in soliciting, or provide products or services competitive with or similar to products or services offered by Forge to any person who was a Forge customer or a potential Forge customer. The signatory also agrees not to directly or indirectly on his own behalf or for any other entity provide or sell products or services "competitive with or similar to" products and services that the signatory provided or

sold for Forge during the last 18 months of employment. Moreover, the Agreement contains a "best efforts" provision as well as a requirement that the signatory return all materials related to Forge's business.

Forge's breach of contract count alleges, among other things, that De La Fuente breached his contract by forming and operating a competing business and by destroying Forge files maintained on his laptop. These allegations could be based on alleged obligations created by both the employee handbook as well as the Agreement. Thus, even if the handbook is not a contract, the Agreement creates contractual rights and obligations upon which the breach of contract count could be based. Thus, De La Fuente's motion to dismiss the breach of contract count on the ground that the employee handbook fails to create a contract is denied.

    2.  *Failure to allege facts*

To the extent that De La Fuente asserts that the breach of contract claim is not supported by factual averments (*see* Parts III.B, III.D, III.E of De La Fuente's motion to dismiss), it is denied for the reasons already stated above in Part III.A.2 of this order. Forge need not allege facts in federal court.

    3.  *No "transmission" of prohibited materials*

Finally, Forge alleges that De La Fuente breached his contract with the company when he did not "refrain from the transmission of sexually explicit images" and did not "refrain from using the Internet for personal gain, obscene messages and downloading of unauthorized software." According to Forge, these activities were prohibited by the policies stated in the employee handbook, which constituted a contract.

De La Fuente first asserts that Forge identifies no specific obscene messages and no

personal gain that De La Fuente obtained from the internet. De La Fuente also asserts that Forge did not allege that he "downloaded" software from the internet. As already noted, such factual allegations are unnecessary. Further, contrary to De La Fuente's assertion, Forge does allege that De La Fuente downloaded software. *See* Complaint at ¶ 49 ("De La Fuente's computer hard drive had evidence of multiple highly destructive evidence destroying software programs being downloaded . . . from the Internet . . . .").

De La Fuente's further argument that he did not "transmit" images, as prohibited by the employee handbook, is unavailing. According to De La Fuente, even assuming the handbook policies constituted the terms of a binding contract, he did not violate any policy because Forge only alleges that he "*visit[ed] and download[ed]* numerous explicit sexual images . . ." and Forge alleges that he ultimately deleted them in any event. Thus, according to De La Fuente, he did not violate the policy prohibiting offensive and sexually explicit *messages and transmissions*.

However, the court will not at this stage of the litigation conclude that De La Fuente could not as a matter of law have violated the policy against offensive and sexually explicit "messages and transmissions" by visiting and downloading sexually explicit images. De La Fuente has cited no authority for his position and indeed, the Seventh Circuit appears to take a relatively broad view of the term "transmission," at least as it is included in the CFAA. *See IAC*, 440 F.3d at 419 (concluding that the term "transmission" as used in the CFAA includes either downloading file-destroying software from the internet or obtaining it from a floppy disk or CD).

D. <u>Tortious Interference</u> (Count V)

In Count V, Forge alleges that Impaq interfered with Forge's contractual relationship with De La Fuente and caused him to violate his fiduciary duties. Impaq seeks to dismiss this count

because: (1) the allegations in the breach of contract count do not support a breach of contract by De La Fuente; (2) Impaq is the alter ego of De La Fuente and one cannot be liable for interfering with one's own contract, *Lawrence H. Flynn, Inc. v. Philip Morris USA, Inc.*, No. 05 C 318, 2006 WL 211823, at * (N.D.Ill. Jan.19, 2006)("It is a well-established rule that a party may not be charged with tortious interference with his own contract.")(citations omitted); and (3) the count fails to allege proximately caused damages.

Regarding the first ground, that there can be no interference claim because there was no breach of contract, it is not entirely clear what Impaq is arguing. However, to the extent that it is asserting that the tortious interference count should be dismissed because the breach of contract count fails to state a claim, the motion is denied because the court denied the motion to dismiss the breach of contract count for failure to state a claim, as set forth above.

As to the second basis for dismissal of this count, that Impaq is the alter ego of De La Fuente and thus cannot have interfered with De La Fuente's contract with Forge, Forge responds that is has not alleged that Impaq is De La Fuente's alter ego. Thus, Forge asserts that the count should not be dismissed. It is true that Forge has not expressly alleged that De La Fuente is the alter ego of Impaq, though it is hinted at when Forge alleges that Impaq's website was registered to De La Fuente's home address. However, the alter ego analysis is fact-intensive and therefore, is inappropriate for resolution on a motion to dismiss. *Larson v. CSX Transp., Inc.*, 835 N.E.2d 138, 145 (Ill. App. Ct. 2005) (alter ego determination based on "whether the entities have failed to maintain formal corporate distinctions, or whether recognition of the entities as distinct would allow them some unfair advantage").

Regarding the third argument for dismissal, failure to allege proximately caused damages,

the court has already repeatedly noted that specific facts need not be alleged. Forge alleges that it has "been injured and faces irreparable injury." These allegations are sufficient. For this same reason, Impaq's argument in its reply that Forge has not alleged that Impaq did anything to induce De La Fuente to breach his contract with Forge or that Impaq'a alleged conduct caused any harm fails. Forge alleges that "Impaq took steps to move Forge's business to Impaq and otherwise allowed De La Fuente to engage in prohibited conduct for the benefit of Impaq thereby interfering with Forge's contract and economic expectancies." Moreover, Forge alleges that it "has been injured" by Impaq's actions. Again, these allegations are sufficient in federal court.

## IV. Conclusion

For the reasons provided above, De La Fuente and Impaq's motion to dismiss [22-1] is denied.

**ENTER:**

_____
**Blanche M. Manning**
**United States District Judge**

**DATE:** October 16, 2006